UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |
|---|---|
| FOUNTAIN ENTERPRISES, LLC d/b/a ANYTIME FITNESS – WEST POINT, VITA GRATA LLC d/b/a ANYTIME FITNESS – SPOKANE VALLEY, KZONE SPORTS, FITNESS, AND WELLNESS LLC d/b/a ANYTIME FITNESS – SCHULYKILL HAVEN, B FIT B YOU LLC d/b/a ANYTIME FITNESS – DANVILLE, EWT ENTERPRISES INC. d/b/a ANYTIME FITNESS – IRWIN, GMT FITNESS ENTERPRISES LLC d/b/a ANYTIME FITNESS – GLENSHAW, and NORTHWEST WELLNESS & FITNESS LLC d/b/a ANYTIME FITNESS REDMOND, individually and behalf of all other similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>MARKEL INSURANCE COMPANY,<br><br>       Defendant. | Civil No. 2:21cv27 |

## <u>ORDER</u>

Pending before the Court is Defendant Markel Insurance Company's Motion to Dismiss and related Motion for Hearing on the Motion to Dismiss. ECF Nos. 11 & 17. For the following reasons, Defendant's Motion to Dismiss (ECF No. 11) is **GRANTED** and the Motion for Hearing (ECF No. 17) is **DENIED**.

1

## I.    BACKGROUND

In deciding a motion to dismiss for failure to state a claim, courts accept a complaint's well-pled factual allegations as true and draw any reasonable inferences in favor of the plaintiff. *See Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012). This Court considers the following facts as alleged in Plaintiffs' Amended Class Action Complaint (ECF No. 9) ("Amended Complaint" or "Complaint").

### A.    The Parties

Plaintiffs are a group of Anytime Fitness franchise owners. Am. Compl. at 2, ECF No. 9. Anytime Fitness is a 24-hour health and fitness club with locations in all fifty states. *Id.* Plaintiffs are franchisees who seek to represent themselves and a national class of Anytime Fitness franchise owners whose businesses were negatively impacted by government shutdowns to prevent the spread of the novel COVID-19 virus and its variants.[1] *Id.*

The Plaintiffs are as follows: Fountain Enterprises is a Mississippi limited liability company that operates Anytime Fitness franchises in four locations: Fulton, Mississippi; West Point, Mississippi; Brewton, Alabama; and Monroeville, Alabama. *Id.* at 2. Vita Grata is a Washington limited liability company and operates an Anytime Fitness franchise in Spokane Valley, Washington. *Id.* KZone is a Pennsylvania limited liability company and operates an Anytime Fitness franchise in Schuylkill Haven, Pennsylvania. *Id.* B Fit B You is a Pennsylvania limited liability company and operates an Anytime Fitness Franchise in Danville, Pennsylvania. *Id.* at 3. EWT

---

[1] Plaintiffs have not yet moved for class certification.

is a Pennsylvania corporation, and GMT is a Pennsylvania limited liability company. *Id.* Together, EWT and GMT operate two Anytime Fitness franchises in Irwin, Pennsylvania and Glenshaw, Pennsylvania. *Id.* Northwest Wellness is a Washington limited liability company and operates an Anytime Fitness franchise in Redmond, Washington. *Id.*

Defendant Markel Insurance Company ("Defendant" or "Markel") is an insurance company with which Plaintiffs have bilateral contracts for insurance coverage. *See id.* at 3–4. Plaintiffs were notified by the franchisor that Markel was the preferred insurance provider for Anytime Fitness franchisees. *Id.* at 3.

B.    Insurance Policies

i. *Fountain Enterprises*

Fountain Enterprises became an Anytime Fitness franchisee in 2009. *Id.* It subsequently purchased insurance coverage from Markel. *Id.* On April 1, 2019, Fountain Enterprises purchased a commercial policy and renewed it on April 1, 2020 (collectively referred to as the "Policy"). *Id.*; Ex. A to Am. Compl., ECF No. 9-1. Fountain Enterprises paid for and received coverage under a *Health Clubs Commercial Property Elite Enhancement* ("HCLPE") endorsement to its Policy. *Id.* at 4; Ex. A to Am. Compl. at 1, ECF No. 9-1.

The HCLPE endorsement is intended to protect Fountain Enterprises from loss of business income resulting from suspension of operations. *Id.* at 4. Fountain Enterprises also obtained Extra Expense coverage. *Id.* This is intended to pay necessary expenses that Fountain Enterprises would not have incurred without direct

physical loss of property. *Id.* One aspect of the HCLPE is "Civil Authority" coverage, through which Fountain Enterprises could recover loss of business income sustained and necessary "Extra Expenses" incurred because access to the premises was prohibited by civil authorities. *Id.*

The relevant provisions read as follows:

(a) Civil Authority

In this Additional Coverage, Civil Authority, the described premises are premises to which this endorsement applies. When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

> (i) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

> (ii) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Ex. A to Am. Compl. at 95–96, ECF No. 9-1.[2]

(3) Extra Expense

Extra Expense means the necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been

---

[2] In ruling on a motion to dismiss, a court may "consider documents attached to the complaint." *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). The Court relies on the language contained in the Policy that is attached as Exhibit A to the Complaint. Any conflicts between the allegations in the Complaint and the content of the exhibit are resolved in favor of the exhibit. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166–67 (4th Cir. 2016) ("[I]n the event of conflict . . . the exhibit prevails.").

no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss. We will pay Extra Expense (other than the expense to repair or replace property) to:

> (a) Avoid or minimize the "suspension" of business and to continue at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

> (b) Minimize the "suspension" of business if you cannot continue "operations." We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

Ex. A to Am. Compl. at 95, ECF No. 9-1.

The Policy, like all others described below, also has a Virus Exclusion clause that states the following:

> We will not pay for *loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.* However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

Ex. A to Am. Compl. at 253, ECF No. 9-1 (emphasis added).

In March and April of 2020, Fountain Enterprises had to suspend business operations in Fulton, Mississippi; Clay County, Mississippi; and West Point, Mississippi. *Id.* at 5. It was required to close both of its Anytime Fitness franchises in Alabama as well. *Id.* at 6. Fountain Enterprises sent a Notice of Loss to Markel on April 18, 2020, describing loss of business income it incurred as a result of government shutdowns. *Id.* On April 23, 2020, Markel denied Fountain Enterprises' claim for coverage. *Id.* Fountain Enterprises alleges that Markel breached its insurance policy and

5

seeks a declaratory judgment requiring Markel to extend coverage under the relevant provisions of the insurance policy. Am. Compl. at 71 ¶ B, ECF No. 9.

### ii. Vita Grata

Vita Grata became an Anytime Fitness franchisee in 2019. *Id.* at 14. On May 16, 2019, it purchased an insurance policy similar to that which Fountain Enterprises purchased. *Id.* Its policy contained the same HCLPE endorsement, which allegedly allowed recovery under the Extra Expense and Civil Authority provisions. *Id.* Its policy also contained the Virus Exclusion clause. Am. Compl. at 14–16, 82, ECF No. 9.

Vita Grata shut down operations of its franchises on March 16, 2020. *Id.* at 14. As a result, it incurred losses and expenses related to the inability to use the physical locations. *Id.* It filed a Notice of Loss based on government shutdowns with Markel on March 18, 2020, and Markel refused to provide coverage on April 1, 2020. *Id.* at 16.

### iii. KZone Sports, Fitness, and Wellness ("KZone")

KZone was advised by the franchisor to purchase insurance from Markel for its Anytime Fitness franchises. *Id.* at 7. It purchased a commercial policy on November 14, 2019. *Id.* KZone's policy included HCLPE coverage similar to that purchased by Fountain Enterprises. *Id.* Its policy also includes Extra Expense and Civil Authority coverage. *Id.* at 8. The Virus Exclusion clause described above is in this policy. *Id.*

KZone's Anytime Fitness locations in Pennsylvania were shut down on March 16, 2020, pursuant to government mandate. *Id.* The Amended Complaint does not describe when or if KZone filed a Notice of Loss with Markel and when it was rejected.

*Id.* Nonetheless, KZone seeks recovery for loss of business for the duration it was shut down as a result of the Pennsylvania Governor's Executive Order. *Id.*

### iv. B Fit B You ("B Fit")

When B Fit became an Anytime Fitness franchisee, it obtained commercial insurance coverage from Markel. *Id.* at 9. It purchased a policy on June 30, 2019. *Id.* It paid for and received HCLPE coverage similar to that described above. B Fit's expectation was that the HCLPE provision would provide both "Extra Expense" and "Civil Authority" coverage under its Policy. *Id.* The Virus Exclusion clause is in this policy. *Id.*

A government shutdown forced B Fit to suspend its business operations at its Anytime Fitness location on March 16, 2020. *Id.* The Amended Complaint does not describe when or if B Fit filed a Notice of Loss with Markel and when it was rejected. *Id.* It seeks damages for losses and expenses directly resulting from inability to use the physical location of the fitness center. *Id.*

### v. EWT Enterprises and GMT Fitness ("EWT" and "GMT")

EWT and GMT purchased commercial insurance from Markel on January 29, 2020. *Id.* at 10. They received the HCLPE coverage described above with their policy, including Extra Expense and Civil Authority coverage. *Id.* The Virus Exclusion clause is also in this policy. *Id.*

On March 16, 2020, all operations at EWT and GMT's Anytime Fitness locations were suspended due to COVID-19 restrictions. *Id.* The Amended Complaint does not describe when or if EWT and GMT filed a Notice of Loss with Markel and when

it was rejected. *Id.* EWT and GMT seek the same relief described above for losses incurred from the closure. *Id.*

### vi. Northwest Wellness & Fitness ("Northwest")

Northwest purchased a commercial policy for its Anytime Fitness franchise on October 1, 2019. *Id.* at 12. It contained a provision similar to the HCLPE provisions above but under the name of *Washington Health Clubs Property Elite Enhancement* ("WHCLPE"). Like the HCLPE endorsement, the WHCLPE allowed recovery for "Extra Expense[s]" and losses resulting from actions related to "Civil Authority." *Id.* at 13. The Virus Exclusion clause is also in this policy. *Id.*

Northwest had to suspend operations of its Anytime Fitness location on March 16, 2020. *Id.* The Amended Complaint does not describe when or if Northwest filed a Notice of Loss with Markel and when it was rejected. It seeks damages for loss of income and other expenses from Markel under the insurance policy.

\* \* \*

Plaintiffs seek a variety of damages and declarations related to their central claim that Markel is bound to provide coverage for the losses they incurred. Am. Compl. at 71–72, ECF No. 9. They also request to be class representatives and ask this Court to certify their Complaint as a Class Action Complaint under Federal Rule of Civil Procedure 23. *Id.* at 71. Defendant moves to dismiss, challenging the sufficiency of the claims. Mot. to Dismiss, ECF No. 11; Mem. in Supp. of Mot. to Dismiss, ECF No. 12. This matter is fully briefed and ripe for resolution. The Motion is decided

without oral argument, as the facts and arguments are adequately presented in the briefing on the Motion. Fed. R. Civ. P. 78(b); E.D. Va. Local R. 7(J).

## II.    MOTION TO DISMISS – STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. A defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) will be granted where the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausibility standard is not analogous to a probability requirement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, there must be more than a small possibility that the defendant is liable. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Mere conclusory statements or "formulaic recitation of the elements of a cause of action" are insufficient under this standard. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks and citation omitted).

At this stage of the litigation, a court construes the Complaint in the light most favorable to the plaintiff, accepts the plaintiff's allegations as true, and draws all reasonable inferences in favor of the pleader. 5B Charles A. Wright et al., Federal Practice & Procedure § 1357 & n.11 (3d ed.). A court is not bound to any legal conclusions drawn in a complaint. *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). A court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id* (citation omitted).

## III.    CHOICE OF LAW

The Court must first identify the applicable state law used to interpret the insurance policy at issue. When sitting in diversity, a court must apply the choice-of-law principles of the forum state in which it sits. *Bilancia v. Gen. Motors Corp.*, 538 F.2d 621, 623 (4th Cir. 1976); *Asbestos Removal Corp. of Am., Inc. v. Guar. Nat'l Ins. Co.*, 846 F. Supp. 33, 34 (E.D. Va. 1994).

### A.    Legal Standard

Virginia's choice-of-law principles provide that insurance contracts are governed by the law of the state "where an insurance contract is written and delivered." *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993). With regard to what constitutes "delivered," the Fourth Circuit has provided two somewhat different lines of reasoning in unpublished opinions. *See Great Am. Ins. Co. v. Gross*, No. 3:05cv159, 2008 WL 376263, at *5 (E.D. Va. Feb. 11, 2008) (describing tension in Fourth Circuit opinions). However, like the court in *Great American Insurance Co.*, this Court will follow the reasoning of the Fourth Circuit in its published opinion in *Seabulk Offshore Ltd. v. American Home Assurance Co.*, 377 F.3d 408 (4th Cir. 2004). In that case, the court concluded that an insurance contract was delivered at the location where the insured received the policy. *Id.* at 419 (applying Virginia law because "the last [relevant] act is the delivery of the policy to the insured," and "the Policy was delivered to [the insured] at its offices in Reston, Virginia"); *see also Great Am. Ins. Co.*, 2008 WL 376263, at *5 ("*Seabulk* suggests that the state where the insured took physical possession of the policy is the state of delivery."). The fact that a policy may be first delivered by

10

the insurer to an insurance broker, for further delivery to the insured, is of no consequence to the choice-of-law analysis. "[D]elivery of an insurance policy to a broker, who merely acts as a conduit and is not a necessary party to effectuate the policy, does not constitute 'delivery'; rather, delivery does not take place until the insured takes physical possession of the policy." *Admiral Ins. Co. v. G4S Youth Servs.*, 634 F. Supp. 2d 605, 611 (E.D. Va. 2009); *see also Great Am. Ins. Co.*, 2008 WL 376263, at *5 (applying Virginia law where insurer in Illinois sent policy to broker in New York, who forwarded policy to insured in Virginia).

B.    Analysis

The parties agree that Virginia choice-of-law principles apply but disagree on how they apply. Plaintiffs contend that Virginia substantive law applies because the policies were mailed from Virginia to a broker in Virginia, while Defendant contends that the applicable substantive law is the law of the state where each Plaintiff received its policy. Based on the above discussion, this Court agrees with Defendant, finding that the laws of three different states govern Plaintiffs' claims and the analysis of the insurance policies.

Markel is headquartered in Virginia. Resp. in Opp'n at 3, ECF No. 13. It mailed the insurance policies to its Virginia broker, Markel Insurance Services, for "unconditional delivery" to Plaintiffs. *Id.* at 3–4.

The policy mailed to Fountain Enterprises was delivered to Mississippi. Fountain Enterprises is domiciled in Mississippi and took possession there of the policy for its multiple Anytime Fitness franchises located in Mississippi and Alabama. Mem.

11

in Supp. of Mot. to Dismiss at 4, ECF No. 12. Plaintiffs do not dispute that the insurance policy was received in Mississippi. *See generally* Resp. in Opp'n, ECF No. 13. Because the policy was delivered to Fountain Enterprises in Mississippi, that state's law governs Fountain Enterprises' claims.

KZone, EWT, GMT, and B Fit B You's policies were delivered in Pennsylvania. Mem. in Supp. of Mot. to Dismiss at 5, ECF No. 12. Their franchises are located in Pennsylvania. *Id.* Plaintiffs do not dispute that the insurance policy was received in this state. *See generally* Resp. in Opp'n, ECF No. 13. Therefore, their insurance policies are governed by Pennsylvania law.

Likewise, Vita and Northwest's insurance policies were delivered to Washington. *See* Mem. in Supp. of Mot. to Dismiss at 5, ECF No. 12. Their claims are governed by Washington law.[3]

## IV.   INSURANCE POLICY (Counts I–VI)

Plaintiffs seek coverage for their losses under their insurance policies from Defendant. The provisions upon which Plaintiffs rely for these claims require "direct physical loss of or damage to" their property. Ex. A to Am. Compl. at 94–95, ECF No. 9-1. This Court must therefore determine if losses caused by COVID-19-related government shutdowns involve "direct physical loss [] or damage." Moreover, as explained more fully below, a party is not entitled to coverage under any of the alleged coverage provisions if the Virus Exclusion clause is applicable and acts as a bar to

---

[3] As further explained below, the Court notes that its ruling would be the same as to all Plaintiffs even if Virginia law applied to their claims.

recovery for financial losses caused by government ordered shutdowns due to the COVID-19 pandemic. Therefore, this Court must interpret the language "caused by or resulting from any virus" that is included in the identical Virus Exclusion clauses in the Plaintiffs' insurance policies. *See* Ex. A to Am. Compl. at 253, ECF No. 9-1.

A.    Fountain Enterprises' Claims

Many courts have rejected arguments that government shutdowns imposed during the COVID-19 global pandemic compel insurance reimbursement based on policies with language similar to that found here. Most decisions find that shutdowns from COVID-19 do not constitute "direct or physical loss of or damage to property." *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288, 296 (S.D. Miss. 2020) (collecting cases). This Court agrees with the conclusion of those courts that loss of usability is not a "direct or physical loss" that entitles an insured to gain coverage from an insurer, particularly in the case of COVID-19 shutdowns. *Id.* at 295.

Plaintiffs would have this Court adopt an interpretation of the relevant insurance provisions that varies from the majority of decisions that have addressed this issue. *See id.* But this Court must analyze the contract according to its plain meaning, which requires the conclusion that the facts of this case do not trigger coverage under the relevant provisions.

This is because there is no direct or physical loss entitling Plaintiffs to recovery. For a party to recover under provisions analogous to the HCLPE, courts have determined that there is usually a direct physical loss of the property, some sort of physical alteration, or physical dispossession (such as theft or destruction). *Real*

*Hosp., LLC*, 499 F. Supp. 3d at 294 (describing types of harm to property that would allow recovery under similar provision). Like the plaintiff in *Real Hospitality*, Plaintiffs seek recovery for loss of use of their physical property, i.e., their Anytime Fitness locations. This is not a "direct or physical loss" that entitles them to recovery because there is no evidence that "any insured property was damaged or that Plaintiff was permanently dispossessed of any insured property." *Id*. at 295. Loss of usability is not the same as loss of actual property and does not satisfy the requirement. *Id*. This is consistent with other courts' holdings that loss of use of property due to government shutdowns to prevent the spread of COVID-19 does not establish "direct physical loss of or damage to property." *Id*. (collecting cases); *see also, e.g., Nguyen v. Travelers Cas. Ins. Co. of Am.*, No. 2:20cv597, 2021 WL 2184878, at *11 (W.D. Wash. May 28, 2021) (holding that loss of certain uses of property is type of "detrimental economic impact" that does not trigger coverage), *appeal filed*, No. 21-35523 (9th Cir. June 30, 2021); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 174 (S.D.N.Y. 2020); *Green Beginnings, LLC v. West Bend Ins. Co.*, No. 20cv1661, 2021 WL 2210116, at *4–5 (E.D. Wis. May 28, 2021) ("[D]irect physical loss requires more than just the temporary loss of use of the insured's property".); *Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, No. 20cv3418, 2021 WL 860345, at *4 (S.D.N.Y. Mar. 6, 2021) ("[A] complaint which only alleges loss of use of the insured property fails to satisfy the requirement for physical damage or loss".).

Moreover, even if a party can prove direct or physical loss, recovery is subject to being barred by other provisions in the relevant insurance policy. Applying

Mississippi law, courts have found that virus exclusion clauses similar to the clause in this case bar recovery for financial losses resulting from government-related COVID-19 shutdowns. *E.g.*, *Real Hosp., LLC*, 499 F. Supp. 3d 288. In *Real Hospitality*, the court found that "[t]he virus exclusion *clearly and unequivocally* exempts 'loss or damage caused by or resulting from any virus.'" *Id.* at 297 (emphasis added). This included government shutdowns based on COVID-19 because the shutdowns were instituted to protect the health and safety of all residents by halting community spread of the virus. *Id.*

The decision in *Real Hospitality* broadly construed the "caused by or resulting from" language. It followed the approach established under Mississippi insurance law that a loss is deemed to have "resulted from" a prior condition where the "condition set in motion the chain of events culminating in the" loss. *Duck v. First Assur. Life of Am.*, 929 F. Supp. 236, 239 (S.D. Miss. 1996).

Another court applying Mississippi law adopted the reasoning from *Real Hospitality* and rejected claims for coverage because of a virus exclusion clause in an insurance policy. *Kirkland Grp., Inc. v. Sentinel Ins. Co., Ltd.*, No. 3:20cv496, 2021 WL 2772561, at *2–*3 (S.D. Miss. June 29, 2021). In *Kirkland*, the court ruled that a virus exclusion clause was applicable and barred recovery. *Id.* It did so because the virus triggered the government shutdowns that resulted in the plaintiff's claimed losses. *Id.*

The Virus Exclusion provision here precludes recovery as well, for the same reasons outlined in *Real Hospitality* and *Kirkland Group*. The clause states "[w]e will

15

not pay for *loss or damage caused by or resulting from any virus*, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease." Ex. A to Am. Compl. at 253, ECF No. 9-1 (emphasis added). This is indistinguishable from the virus exclusion provision in *Real Hospitality*. As consistently recognized by courts applying Mississippi law in similar factual contexts, the COVID-19 pandemic was the motivation of the government shutdowns at issue. Plaintiffs admit that the COVID-19 pandemic is caused by a virus. In agreement with the courts cited above, this Court finds that Plaintiffs were forced to close their Anytime Fitness locations "resulting from" the COVID-19 pandemic.

Plaintiffs argue that if Markel intended the Virus Exclusion clause "to apply whenever a virus played a role, regardless of degree, in the occurrence of a loss, it could have easily used more expansive policy language to crystalize its intent." Resp. in Opp'n at 11, ECF No. 13. But courts analyzing this precise language in the virus exclusion clause have determined overwhelmingly and correctly that, according to the plain and ordinary meaning of the clause's words, the fact that the COVID-19 virus caused the government shutdowns that affected Plaintiffs is sufficient to bar recovery for these plaintiffs. In other words, it is sufficient for COVID-19 to be a cause of Plaintiffs' alleged harm and not the *sole* cause. *E.g., Real Hosp., LLC*, 499 F. Supp. 3d at 296 (collecting cases); *Dental Experts, LLC v. Mass. Bay Ins. Co.*, No. 20c5887, 2021 WL 1722781, at *4 (N.D. Ill. May 1, 2021) ("Given the 'resulting from' language, [Plaintiffs'] argument—that the shutdown orders, not the virus caused loss of business income—lacks merit."); *Kingray Inc. v. Farmers Grp. Inc.*, No. EDCV20-

16

963, 2021 WL 837622, at *6 (C.D. Cal. Mar. 4, 2021) (holding that closures and modifications to operations of businesses resulted from COVID-19); *Quakerbridge Early Learning LLC v. Selective Ins. Co. of New Eng.*, No. cv207798, 2021 WL 1214758, at *4 (D.N.J. Mar. 31, 2021) ("The Court finds no reason to deviate from this growing line of recent opinions and finds that the Virus Exclusion clearly and unambiguously bars coverage for Plaintiff's claims."), *appeal filed*, No. 21-1719 (3d Cir. Apr. 20, 2021). Again, this Court agrees with the position expressed in these decisions.

Plaintiffs' reliance on *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Co.*, 506 F. Supp. 3d 360 (E.D. Va. 2020),[4] is misplaced. In *Elegant Massage*, the exclusion at issue was different than the Virus Exclusion clause here. The clause in *Elegant Massage* excluded losses from "(1) [g]rowth, proliferation, spread or presence of 'fungi' or wet or dry rot; or (2) Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease; and (3) We will also not pay for . . . (a) Any remediation of "fungi", wet or dry rot, virus, bacteria or other microorganism . . . ." 506 F. Supp. 3d at 378. The court determined that for this exclusion to apply, a virus must have spread throughout a property. *Id.* at 379. The virus must be the "immediate cause in the chain" of the claimed loss for the exclusion to apply. *Id.*

---

[4] The decision in *Elegant Massage, LLC* applied Virginia law and has been identified by numerous courts as one of the only cases where a virus exclusion provision did not preclude recovery. *E.g., Eye Care Ctr. of N.J., PA v. Twin City Fire Ins. Co.*, No. 20-05743, 2021 WL 457890, at *4 (D.N.J. Feb. 8, 2021).

The clause at issue in this case does not reference the proliferation of or removal of any virus, bacteria, or fungi. It does not reference growth or detoxification of such organisms. Following the majority of courts around the country to address this issue, this Court determines that there are no similar limiting references or phrases to bar the applicability of the Virus Exclusion clause. Accordingly, this Court is compelled to dismiss Fountain Enterprises' claims against Markel.

B.    KZone, EWT, GMT, and B Fit B You's Claims

These claims are governed by Pennsylvania law. The provisions of the relevant insurance policies are materially identical to the provisions discussed above.

Like Mississippi courts, courts applying Pennsylvania law have held unfalteringly that plaintiffs with insurance coverage similar to that at issue here are not entitled to recovery from their insurance companies for losses from COVID-19-related government shutdowns. *See, e.g.*, *RDS Vending LLC v. Union Ins. Co.*, No. cv20-3928, 2021 WL 1923024 (E.D. Pa. May 13, 2021), *appeal filed,* No. 21-2133 (3d Cir. June 16, 2021). In *RDS Vending*, the court determined that the plaintiff was not entitled to recovery under its insurance policy because it could not show "direct physical loss of" its building. *Id.* at *4.

The court also held that insurance claims related to COVID-19 shutdowns were barred by a virus exclusion clause. *Id.* at *5. The clause in *RDS Vending* included the language referenced above stating that the insurer would not "pay for *loss or damage caused by or resulting from any virus.*" *Id.* (emphasis added). Construing it as unambiguous, the court determined that the policy did "not cover losses or

damage caused by SARS-CoV-2, the novel coronavirus that causes COVID-19." *Id.* Although it was the government shutdowns and other related requirements of social distancing that directly caused plaintiff's losses, the virus exclusion clause barred recovery because those shutdowns were caused by COVID-19.

Other courts applying Pennsylvania law have affirmed that the virus exclusion clause bars recovery. *See, e.g.*, *Shantzer v. Travelers Cas. Ins. Co. of Am.*, No. 20-2093, 2021 WL 1209845, at *5 (E.D. Pa. Mar. 21, 2021) (ordinary meaning of virus exclusion clause encapsulated COVID-19 regardless of "[w]hether COVID-19 or government shutdown caused Shantzer's loss"), *appeal filed*, (3d Cir. Apr. 20, 2021); *Newchops Rest. Comcast LLC v. Admiral Indem. Com.*, 507 F. Supp. 3d 616, 627 (E.D. Pa. 2020) (virus exclusion clause was unambiguous and barred recovery where shutdowns from COVID-19 caused losses). As was the case under Mississippi law, this Court agrees.

The Virus Exclusion clause contained in the relevant policies here is the exact same provision discussed in the case law discussed above. The provision states "[w]e will not pay for loss or damage caused by or resulting from any virus." Ex. A to Am. Compl. at 253, ECF No. 9-1. As discussed, courts applying Pennsylvania law have correctly determined the "damage caused by or resulting from any virus" to unambiguously encapsulate the COVID-19 crisis. Losses from government shutdowns resulting from COVID-19 are included in this exclusion. *Shantzer*, 2021 WL 1209845, at *5. Plaintiffs are seeking recovery for financial losses from government-forced closures of their Anytime Fitness facilities. Am. Compl. at 7, ECF No. 9. Accordingly, this court finds that KZone, EWT, GMT, and B Fit B You's claims are barred, and

recovery is precluded under the Virus Exclusion clause of the applicable insurance policies.

C.    Vita and Northwest's Claims

Washington courts have been clear in stating that a court must apply the plain meaning of a contract. *Ainsworth v. Progressive Cas. Ins. Co.*, 322 P. 3d 6, 11 (Wash. Ct. App. 2014). A New Jersey federal court has decided the instant issue of the Virus Exclusion clause while applying Washington law. *Colby Rest. Grp., Inc. v. Utica Nat'l Ins. Grp.*, No. 20-5927, 2021 WL 1137994 (D.N.J. Mar. 12, 2021). The court in *Colby* dismissed the plaintiff's claims because it found that the language in the virus exclusion clause unambiguously excluded recovery for losses from the COVID-19 pandemic. *Id.*

The court rejected the same arguments that Plaintiffs make here: that it is government shutdowns that caused their losses and not the COVID-19 virus. Shutdowns from COVID-19 were "tied inextricably to the virus" and this meant that the plaintiffs could not "avoid the clear and unmistakable conclusion that the coronavirus was the cause of the alleged damage or loss." *Id.* at *5.

This Court agrees, and consequently, for essentially the same reasons explained above, Vita and Northwest's claims are excluded under the Virus Exclusion clause.[5] The language of the Virus Exclusion clause is unambiguous. It states that losses caused by or resulting from a virus will be excluded from recovery. Government

---

[5] This Court need not determine whether the other exclusions cited by Defendant apply. It is sufficient that the Virus Exclusion clause applies, and bars recovery sought by Plaintiffs.

shutdowns in Washington state were issued to mitigate the spread of COVID-19. The shutdowns would not have been issued but for the public health crisis. As such, the shutdowns are inherently intertwined with the COVID-19 global pandemic. *See Nguyen*, 2021 WL 2184878 at *15 ("Here, the underlying facts are undisputed and the line of causation is clear: COVID-19 caused the Governor to issue the Proclamations, which forced Plaintiffs to curtail their business operations. Under such circumstances, the exclusion barring coverage resulting from the virus applies.").[6]

## V.    CIVIL AUTHORITY (Counts VII–IX)

All claims for recovery pursuant to the Civil Authority provisions in the insurance policies must also be dismissed. The Civil Authority provision applies when property is damaged and action by a civil authority is prompted to respond to that damage. *Newchops Rest. Comcast LLC*, 507 F. Supp. 3d at 625. But where civil

---

[6] As noted above, even if Plaintiffs were correct that Virginia law should apply, the result of this order would not change. An analysis under Virginia law would likewise compel dismissal of all Plaintiffs' claims due to the Virus Exclusion clauses in their policies. In *Chattanooga Professional Baseball LLC v. National Casualty Co.*, the Ninth Circuit applied Virginia law in addressing whether an identical virus exclusion clause barred recovery for loss of business income as a result of COVID-19 induced government shutdowns. No 20-17422, 2021 WL 44933920, at *3 (9th Cir. Oct. 1, 2021). That court rejected the same causation argument made here, Mem. in Opp'n to Mot. to Dismiss at 6–8, ECF No. 13, holding that the virus exclusion clause barred recovery under Virginia law because there was no "efficient intervening cause[] that broke the causal chain stemming from the COVID-19 virus." 2021 WL 4493920, at *3. This Court agrees with that analysis, and thus would dismiss Plaintiffs' claims even if Plaintiffs were correct that Virginia substantive law applied. *Cf.* Mem. in Opp'n to Mot. to Dismiss at 3 n.1, ECF No. 13 (suggesting that there is no material difference between the insurance law of Virginia and that of the other relevant states vis a vis the issues in this case).

authorities have issued orders such as government shutdowns, the loss is not covered and is specifically excluded under the Virus Exclusion clause. *Id.* at 627.

Other jurisdictions have held that an insured is not entitled to recovery under a civil authority provision where a virus exclusion clause applies. *See, e.g.*, *Kirkland Grp., Inc.*, 2021 WL 2772561 (dismissing claims for coverage under civil authority provision because recovery was barred under virus exclusion clause); *Shantzer*, 2021 WL 1209845, at *5 (same).

The same result is required here; Plaintiffs' civil authority claims must be dismissed. Dismissal is in accordance with the many decisions that have dismissed the same claims as barred.

## VI.    BAD FAITH

Plaintiffs seek recovery alleging that Markel denied their claims in bad faith. Am. Compl. at 62, ECF No. 9.[7]

Courts have rejected bad-faith claims under Mississippi law "where a plaintiff cannot establish the existence of coverage for its claimed damages under the policy." *Kirkland Grp. Inc.*, 2021 WL 2772561, at *5 (quoting *Burroughs Diesel, Inc. v. Travelers Indem. Co. of Am.*, 817 F. App'x 2, 5 (5th Cir. 2020)). Pennsylvania courts also have determined that where a claim is properly denied, a claimant cannot succeed on a bad-faith argument. *Cresswell v. Pa. Nat'l Cas. Ins. Co.*, 820 A.2d 172, 179 (Pa.

---

[7] Plaintiffs did not respond to Defendant's arguments regarding the bad-faith claims. *See* ECF No. 13.

Super. Ct. 2003). Likewise, courts applying Washington law have dismissed bad-faith claims where recovery was otherwise barred. *See Nguyen*, 2021 WL 2184878, at *18.

Therefore, Plaintiffs' bad-faith claims must be dismissed. Plaintiffs cannot recover because they have not succeeded in establishing coverage under the applicable insurance policy.

## VII.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 11) is **GRANTED** and the Motion for Hearing (ECF No. 17) is **DENIED**.

The Clerk is **REQUESTED** to forward a copy of this Order to counsel of record for all parties. This case is closed.

**IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge

October 26, 2021
Norfolk, Virginia